## CRESTLINE MEMORIAL HOSPITAL ASSOCIATION, INC., Petitioner,

v.

## NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 80–1601.

United States Court of Appeals, Sixth Circuit.

Jan. 5, 1982.

Richard V. Whelan, Jr., T. Merritt Bumpass, Jr., Thompson, Hine & Flory, Cleveland, Ohio, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Joseph Schwachter, N. L. R. B., Washington, D. C., for N. L. R. B.

Before MERRITT and KENNEDY, Circuit Judges, PRATT,* District Judge.

### ORDER

Crestline Memorial Hospital [the Hospital] seeks review of a National Labor Relations Board [NLRB] order and decision, 250 N.L.R.B. No. 28 (Aug. 7, 1980), finding that the Hospital refused to bargain with employee representatives and interfered with

---

* The Honorable Philip Pratt, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

certain employee's rights to unionize in violation of sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act [the Act] respectively. The Hospital contends that it is a "political subdivision" rather than an "employer" within section 2(2) of the Act and thus exempt from Board jurisdiction; alternatively, the Hospital argues that its refusal to bargain was justified by a good faith doubt of the union's majority status, and that the Board's finding that two employees had been threatened with losing their jobs if they refused to cross picket lines was not supported by substantial evidence. We find that the NLRB did not err in its determination that the Hospital was an "employer" covered by the Act and therefore was subject to its jurisdiction. We also find that there is substantial evidence in the record to support the Board's determination that the Hospital engaged in certain unfair labor practices and therefore order that the Board's decision, 250 N.L.R.B. No. 28 (Aug. 7, 1980), be enforced.

The Hospital is a nonprofit Ohio corporation founded in 1913. Although all local adult citizens are members of the corporation, the corporation itself is not a creature of the state or city and its directors and employees are not answerable to any governmental body. Since 1955, however, the city of Crestline [the City] has leased facilities to the Hospital on the condition that it operate as a municipal general hospital; but the City agreed not "to interfere in the management of the Hospital."

In February 1976, after an election favoring the union 12 to 6, the Board certified the Ohio Nurses Association as the employee representative for the bargaining unit (which included "[a]ll registered nurses employed . . . at [the] Crestline Ohio facility"). After several unsuccessful bargaining sessions with the hospital, the union called a strike in October 1976 in which about nine of twenty nurses participated. A tentative agreement was finally reached on December 14 and the union members ratified the agreement soon after. However, the non-union members, who were denied the right to vote in the ratification, wrote a letter to the Hospital's directors protesting the un-ion's voting procedure and requested the Hospital not to ratify the agreement. The Hospital Directors refused to ratify the agreement as written and insisted that they would approve the contract only if its duration were shortened from the previously agreed three years to two months (i.e., the remaining part of the certification year). Rather than accept a contract of two months duration, the union commenced this unfair labor practices action with the NLRB. After extensive hearings, the Administrative Law Judge issued a detailed opinion holding that the Hospital did not qualify for the "political subdivision" exemption from NLRB jurisdiction in § 2(2) of the Act, and that the Hospital did engage in unfair labor practices by threatening to fire two potential strike sympathizers, and by refusing to bargain.

We discuss the Hospital's challenges to each of these holdings in turn.

## I. JURISDICTION: "POLITICAL SUBDIVISION" EXEMPTION

The NLRB has broad powers over labor disputes that affect interstate commerce, *Butte Medical Properties*, 168 N.L.R.B. 266 (1967); see *N. L. R. B. v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963), and a 1974 amendment to the Act eliminated an earlier exemption of nonprofit medical institutions from NLRB jurisdiction, R. Gorman, Labor Law 26 (1976). However, section 2(2) of the Act provides that the "[t]he term 'employer' . . . shall not include . . . any State or political subdivision thereof." Since a "political subdivision" has not been defined in the Act, the NLRB has chosen to interpret the exemption on a case by case basis. The courts have recognized that, within the scope of the Act, the NLRB has discretion whether to exercise jurisdiction, *Herbert Harvey, Inc. v. NLRB*, 424 F.2d 770, 780 (D.C.Cir.1969); *NLRB v. WGOK, Inc.*, 384 F.2d 500, 502 (5th Cir. 1967). The Supreme Court in *NLRB v. Atkins & Co.*, 331 U.S. 398, 67 S.Ct. 1265, 91 L.Ed. 1563 (1947), has declared that in interpreting the definitions

under section 2, "the responsibility of representing the public interest ... and of reaching a judgment after giving due weight to all the relevant factors lay primarily with the Board." *Id.* at 414, 67 S.Ct. at 1273. The *Atkins* court, faced with determining the validity of an NLRB decision that civilian auxiliaries to the wartime military police of the U.S. Army were "employees" covered by the Act, emphasized that it would refuse to overturn the Board's judgment "absent compelling evidence that the Board has failed to measure up to its responsibility" in adequately weighing the interests for and against exercising jurisdiction. *Id.* Nevertheless, in exercising jurisdiction it is clear that the NLRB "cannot treat similar situations in dissimilar ways." *Burinskas v. NLRB*, 357 F.2d 822, 827 (D.C. Cir.1966).

The NLRB has long limited the "political subdivision" exemption of section 2(2) "to entities that are either (1) created by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." See *NLRB v. Natural Gas Utility District*, 402 U.S. 600, 604–605, 91 S.Ct. 1746, 1749, 29 L.Ed.2d 206 (1971) (implicitly approving the Board's construction of section 2(2)).

On the facts of this case, no plausible argument can be made that Crestline Memorial Hospital was "created by the state"—rather, it was and remains a private, nonprofit corporation which has, since 1955, been operating certain facilities leased from the City of Crestline as a municipal general hospital. Nor are the administrators of the Hospital "responsible" to public officials within the meaning to the NLRB provision. Indeed, under the Hospital's agreement with the City, public officials only have the responsibility of ensuring compliance and have no right to interfere with the management of the facility.

The only apparent obstacle to the conclusion that the Hospital does not qualify for the political subdivision exemption is that all citizens of the City of Crestline and the neighboring Jackson Township are eligible to vote, under the Hospital's constitution, for its Board of Directors. The Hospital in an imaginative but ultimately specious argument contends that because the class of "members of the Hospital corporation" and the class of "members of the [city] electorate" are identical, the corporate Board of Directors are thereby "responsible to the electorate" within the meaning of the political subdivision exemption. As the NLRB points out, however, the Directors are not responsible *by law* to the electorate since no city or local laws govern the formation or operation of the Hospital. Rather, the decision to include all citizens as members of the Hospital corporation is entirely the corporation's (deriving solely from the corporate constitution) and is subject to change. A city and a nonprofit corporation are distinct legal entities; this distinction cannot be disregarded merely because the class of members of each entity happens to be coextensive.[1]

The NLRB has consistently refused to extend the political subdivision exemption in similar cases concerning nonprofit hospital corporations involved in operating city or state facilities. See e.g., *NLRB v. Highview, Inc.*, 590 F.2d 174, 178 (5th Cir. 1979); *Grey Nuns of the Sacred Heart*, 221 N.L.R.B. 1215 (1975); *Bishop Randall Hospital*, 217 N.L.R.B. 1129 (1974). The only situation in which the NLRB has held hospitals or similar entities exempt as "political subdivisions" has been when they have been created by the state and are ultimately *administered* by the state or its agencies. See *Camden-Clark Memorial Hospital*, 221 N.L.R.B. No. 160 (1975) (the hospital was

---

1. As we understand it, the rationale for the "political subdivision" exemption has its ultimate basis in the Tenth Amendment considerations of state sovereignty and the Eleventh Amendment grant of judicial immunity to the states. These concerns simply do not extend to cases involving private nonprofit corporations such as the hospital involved here. Thus there is no reason to disregard the independent corporate entity in this case and to identify it with the municipality.

created by the city and administered by trustees whose powers derived solely from the city council which also governed employment practices).[2] In cases recognizing the political subdivision exemption, the NLRB has generally found dispositive the inability of the employer to bargain effectively because control over labor relations is retained by the state or its subdivisions. See *NLRB v. Pope Maintenance Corp.*, 573 F.2d 898 (5th Cir. 1978). By contrast, the Crestline Memorial Hospital retains full control of relations with its employees.

In sum, there is no evidence to support the allegation that the Board's decision not to exempt the Hospital as a 'political subdivision' was unreasonable; indeed, such a finding is consistent with previous Board interpretations of section 2(2) and is supported by substantial evidence here. Moreover, the Hospital's alternative argument that it should be entitled to claim the political subdivision exemption because its activities are closely intertwined with the City is not supported by the record. Although the Board had accepted a similar argument in a case concerning private firemen who had contracted to protect a city, *Rural Fire Protection Co.*, 216 N.L.R.B. 584 (1976), this reasoning has not been extended to independent hospitals under contract to provide a city with particular services (absent other factors such as city control of labor relations). See *NLRB v. Highview, Inc.*, 590 F.2d 174 at 178 (5th Cir. 1979).[3]

Having decided that the NLRB correctly exercised jurisdiction in this case, it remains to consider whether the Board's finding that the Hospital engaged in unfair trade practices was supported by substantial evidence.

## II. REFUSAL TO BARGAIN

The record indicates that notwithstanding agreement on all other points in the labor contract, the Hospital informed the union that it would only ratify a contract valid for two months (the end of the certification year). The Hospital defends this position on the grounds that it had a good faith doubt of the union's majority status primarily because of a letter from nonunion members protesting union ratification procedures. However, in *Ray Brooks v. NLRB*, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954), the Supreme Court noted that once a union is certified, its majority status and exclusive rights as bargaining representative are conclusively presumed for one year (in this case from Feb. 1976 to Feb. 1977). Thus the ALJ and the Board reasoned that, as a matter of law, the Hospital was bound to bargain with the union as one with majority status. The insistence upon a contract of unreasonably short duration has been held to be sufficient evidence of failure to bargain in good faith. *N. L. R. B. v. F. Strauss and Son, Inc.*, 536 F.2d 60, 64 (5th Cir. 1976).

2. In addition to the cases cited in its brief, the Hospital has submitted supplemental citations to several cases in which the NLRB has declined jurisdiction on the political subdivision exemption. As we read these cases, however, the exempt institutions are, without exception, expressly authorized by state or municipal legislative action. Each of these prior cases is therefore distinguishable from the facts before us. See e.g., *New York Institute for the Education of the Blind*, 254 N.L.R.B. No. 85 at 7 (1981) (Institute established and governed by a New York State Legislative Act of 1831); *Toledo District Nurses Assoc.*, 216 N.L.R.B. 743 (1975) (City of Toledo in fact had continuing control and ultimate responsibility for the administration and day-to-day operation of the Nurses Association); *The City Public Service Board of San Antonio*, 197 N.L.R.B. 312 (1972) (The City had actual ownership of the utility, and through governmental action delegated day-to-day management to a Board; City retained some residual authority); *Fayetteville-Lincoln County Electric System*, 183 N.L.R.B. 101 (1970) (Explicitly governed by two Tennessee state Acts; members appointed by mayor, at least one of whom must be an alderman); *Randolph Electric Membership Corp.*, 145 N.L.R.B. 158 (utility created and authorized by state legislation).

3. Moreover, a strong argument can be made that the NLRB has significantly narrowed, if not repudiated, the doctrine in *Rural Fire Protection Co.*, 216 N.L.R.B. 584 (1975), which exempted from its jurisdiction private employers performing "essential" government functions. See *National Transportation Service, Inc.*, 240 N.L.R.B. 565 (1979).

■ According to the NLRB, an employer is not entitled to withdraw recognition from a union during its certification year, and thus a doubt regarding its majority status does not state a defense to the failure to bargain during that year. Even if an employer's good faith doubt of majority status were a possible defense to refusal to bargain within the certification year, the ALJ and the NLRB after hearings and careful examination of the record concluded that no "good faith doubt" of majority status existed. We can only inquire whether this conclusion is supported by substantial evidence. *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The record of the Board meeting at which non-ratification was recommended indicates that the letter protesting union voting policies was the sole objective basis for the board's action. That letter was silent on the question of continued support for the union itself. There is thus substantial evidence to support the Board's decision; the fact that the record could also be read to support an alternative conclusion is not sufficient to overturn such determinations.

### III. THREATS TO DISMISS EMPLOYEES

The Hospital also argues that the Board's finding that a supervisor threatened two employees with dismissal if they refused to cross picket lines was not based on substantial evidence. However, it is uncontroverted that a conflict in testimony exists. The ALJ has given a reasoned explanation for his interpretation and accreditation of conflicting and inconsistent statements by the witnesses. (App. 355.) We find adequate support for the ALJ's opinion in the record. The Board is charged with the duty of determining credibility and resolving conflicts in the testimony; this Court is not at liberty to second guess such determinations when they are adequately supported by the record.

Since we find that the Board did not err in its legal and factual determination, we enforce the Board's order in this case.