**TRICIL RESOURCES, INC., Petitioner,**

v.

**William E. BROCK, III, Secretary of Labor; Occupational Safety & Health Review Commission, Respondents.**

No. 87–3377.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 7, 1987.

Decided Feb. 5, 1988.

David H. Shaffer, Michael J. Spetrino, argued, Joondeph & Shaffer, Akron, Ohio, for petitioner.

Ray Darling, Secretary of OSHRC, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., Barbara A.W. McConnell, S. Lord, George R. Salem, argued, for respondents.

Before NELSON and BOGGS, Circuit Judges, and ALLEN, Senior District Judge.[*]

BOGGS, Circuit Judge.

Tricil Resources, Inc. challenges the final decision of the Occupational Safety and Health Review Commission (the Commission) upholding the decision of the Secretary of Labor (the Secretary) that it does not qualify for the political subdivision exemption of the Occupational Safety and Health Act, 29 U.S.C. § 652(5)[1], and consequently, must comply with a citation and penalty issued against it. Upon review of the parties' briefs and the record of the administrative proceedings, we find that substantial evidence supports the decision that Tricil is not a political subdivision, and accordingly, affirm the decision and order of the Commission.

**I**

Tricil is a private for-profit corporation. From April 1982 to October 1985, Tricil operated the Recycle Energy System (RES) facility in Akron, Ohio, a facility that converts garbage into energy. The city owns the RES and sells the energy. The city hired Tricil to manage the RES's daily operations. The terms of Tricil's hiring were governed by a contract known as the "Long Term Operating Service Agreement" (LTOSA).

The LTOSA provided that Tricil would receive an annual minimum fee for operating the RES and would be reimbursed by the city for all costs and expenses incurred while managing the facility. The LTOSA also provided that Tricil would receive a bonus fee if the RES's actual net operating

---

[*] The Honorable Charles M. Allen, Senior District Judge of the United States District Court for the Western District of Kentucky, sitting by designation.

1. 29 U.S.C. § 652(5) provides:
   For the purposes of this Act—

(5) The term 'employer' means a person engaged in a business affecting commerce who has employees, but does not include the United States, or any State or political subdivision of a State.

income exceeded its projected net operating income. During the three and one-half years Tricil managed the RES, it received more than $19 million in operating fees. The city possessed substantial control over the fiscal operation of the RES. The LTO-SA required Tricil to submit proposed budgets, which the city carefully scrutinized and occasionally altered.

Although the city once rejected a proposed pay increase for Tricil's RES workers and, on another occasion, recommended the removal of two RES employees and the elimination of three other positions at the facility, the LTOSA clearly indicated that Tricil had full responsibility for personnel matters at the RES. The LTOSA required Tricil to maintain safety logs to comply with the Occupational Safety and Health Act and stated that Tricil's duties included "the employment of qualified and experienced operating personnel in sufficient number to accomplish Tricil's duties under this Agreement." Accordingly, Tricil hired all the RES employees, determined their pay and issued their paychecks, provided them with health and pension benefits under Tricil's employee benefits plans, and maintained records to comply with the Fair Labor Standards Act.

Tricil used the city's sales tax exemption number to purchase materials and supplies for the plant. However, Tricil did not have the power of eminent domain and paid state, local and federal income taxes, in addition to social security taxes for its employees.

In December 1984, a series of explosions and fires at the RES caused three deaths and several non-fatal injuries. After conducting an investigation, the Secretary issued citations charging Tricil had violated 29 U.S.C. § 654(a),[2] as well as several safety standards promulgated pursuant to the Act concerning employee emergency plans, personal protective equipment, the use and maintenance of respirators, and the organization, training and education of fire brigades. The Secretary proposed that Tricil pay a $2,870 penalty for its violations.

Tricil and the Secretary subsequently entered into an agreement whereby one citation was dismissed, four were affirmed with a reduced penalty, and two were reclassified as "other than serious" with no penalty. As a result, the proposed penalty was reduced to $300. The parties agreed to a hearing before an ALJ solely to determine whether the operation of the RES was controlled by the city to such an extent that Tricil's operation of the RES should be considered part of the city government and therefore, exempt from the Act. The ALJ ruled that Tricil's operation of the facility was sufficiently independent of the city so that Tricil was not entitled to the political subdivision exemption. Accordingly, the ALJ imposed the modified citations and penalty. The Commission adopted the ALJ's decision by declining to review the case.

## II

The decision as confirmed by the Commission must be upheld if it is supported by substantial evidence in the record considered as a whole and is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" 5 U.S.C. § 706(2)(A); see *Brock v. Chicago Zoological Society*, 820 F.2d 909, 912 (7th Cir.1987) (citing 29 U.S.C. § 655 and *Potomac Electric Power Co. v. Director, OWCP*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980)); *see also* 29 U.S.C. § 660(a) (factual findings of the Commission are conclusive if supported by substantial evidence in the record considered as a whole).

By regulation, the Secretary has stated that:

[a]ny entity which has been (1) created directly by the State, so as to constitute a department or administrative arm of the government, or (2) administered by individuals who are controlled by public

---

**2.** 29 U.S.C. § 654(a) provides:
(a) Each employer—
(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that

are causing or are likely to cause death or serious physical harm to his employees;
(2) shall comply with occupational safety and health standards promulgated under this chapter.

officials and responsible to such officials or to the general electorate, shall be deemed to be a 'State or political subdivision thereof' under section 3(5) [§ 652(5)] of the Act and, therefore, not within the definition of employer, and consequently, not subject to the Act as an employer." 29 C.F.R. § 1975.5(b). The parties agree that Tricil does not meet the first definition of a political subdivision and that it may qualify for the exemption only if its operation of the RES is "administered by individuals who are controlled by public officials and responsible to such officials or to the general electorate...."

The Secretary's regulations provide that he will consider a number of factors [3] when determining if an entity falls within either definition of a political subdivision. The regulations provide, however, that:

> [t]he ... list of factors is not exhaustive and no factor, isolated from the particular facts of a case, is assigned any particular weight for the purpose of a determination by the Secretary of Labor as to whether a given entity is a 'State or political subdivision of a State" and, as such, not subject to the Act as an 'employer'. Each case must be viewed on its merits; and whether a single factor will be decisive, or whether the factors must be viewed in their relationship to each other as part of a sum total, also depends on the merits of each case.

29 C.F.R. § 1975.5(d).

The Secretary's regulations also provide examples of how certain entities should be classified. 29 C.F.R. § 1975.5(e) notes that

some state projects such as harbor districts and municipal transit entities "probably" would be exempt from the definition of an employer, "[d]epending on the facts in the particular situation." On the other hand, business entities merely regulated by the state, such as public utility companies, alcoholic beverage distributors, or "other business entities which under agreement perform certain functions for the State, such as gasoline stations conducting automobile inspections for State and county governments," would normally not be entitled to the exemption, "but unusual factors to the contrary in a particular case may indicate otherwise." 29 C.F.R. § 1975.5(e).

It is apparent from these regulations that whether a particular entity will qualify for the exemption is determined by the unique facts governing that entity's relationship to the local authority it serves. We agree with Tricil that a number of factors involved in its relationship with Akron would lean toward a finding that it is entitled to the exemption, including the substantial fiscal control the city exercised over the RES's operation. However, as recently noted by the United States Court of Appeals for the Seventh Circuit, in reviewing a claim for this same exemption: "[f]iscal accountability to a public agency does not convert a nonprofit corporation into an arm of government." *Brock v. Chicago Zoological Society*, 820 F.2d 909, 913 (7th Cir.1987).

The record indicates that Tricil exercised independent authority over the workers employed at the RES. Tricil established

---

**3.** 29 C.F.R. § 1975.5(c) states:

(c) *Factors for meeting the tests.* Various factors will be taken into consideration in determining whether an entity meets the test [sic].... Some examples of these factors are; Are the individuals who administer the entity appointed by a public official or elected by the general electorate? What are the terms and conditions of the appointment? Who may dismiss such individuals and under what procedures? What is the financial source of the salary of these individuals? Does the entity earn a profit? Are such profits treated as revenue? How are the entity's functions financed? What are the powers of the entity and are they usually characteristic of a government rather than a private instrumen-

tality like the power of eminent domain? How is the entity regarded under State and local law as well as under other Federal laws? Is the entity exempted from State and local tax laws? Are the entity's bonds, if any, tax-exempt? As to the entity's employees, are they regarded like employees of other State and political subdivisions? What is the financial source of the employee-payroll? How do employee fringe benefits, rights, obligations, and restrictions of the entity's employees compare to those of the employees of other State and local departments and agencies? In evaluating these factors, due regard will be given to whether any occupational safety and health program exists to protect the entity's employees.

the RES workers' terms and conditions of employment. Tricil, not the city, dealt with the RES workers' labor unions. The RES workers were covered by Tricil's employees benefits plan instead of the city's plans for public employees. Most significantly, Tricil was responsible for the workers' safety, as shown by the LTOSA's requirement that Tricil maintain safety records and procedures to comply with the Occupational Safety and Health Act.

We agree with the Seventh Circuit that the fact Tricil had independent responsibility for the RES employees' conditions of employment,

> deserve[s] special significance, for the OSH Act's immediate concern is with the employment relationship, at least insofar as the relationship involves considerations of safety and health. The political subdivision exemption represents an accommodation between the Act's general purpose of ensuring a safe workplace and the states' interest in preserving autonomy in their role as employers. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 553 & n. 16, 105 S.Ct. 1005, 1019 & n. 16, 83 L.Ed.2d 1016 (1985); *Crestline Memorial Hospital Assoc. v. NLRB*, 668 F.2d 243, 245 n. 1 (6th Cir.1982). Exempting an entity that does not treat its employees as public employees would obstruct the Act's basic purpose without advancing the interests served by the exemption.

*Brock v. Chicago Zoological Society*, 820 F.2d at 913.

There is no evidence in the record that Tricil's safety violations are either the direct or indirect result of the city's control over Tricil's management of the RES. Conversely, there is substantial evidence in the record that Tricil had independent responsibility for the RES employees' safety and therefore, for the safety infractions listed in the citations issued by the Secretary. Accordingly, the Secretary's decision, as confirmed by the Commission, that Tricil is not entitled to the political subdivision exemption and therefore must comply with the citations and penalty issued against it is AFFIRMED.