NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

PRINCETON MEMORIAL HOSPITAL,
d/b/a Princeton Health Care
Center, Respondent.

No. 90–2905.

United States Court of Appeals,
Fourth Circuit.

Argued April 10, 1991.

Decided July 8, 1991.

As Amended Aug. 5, 1991.

William Allen Baudler, N.L.R.B., Washington, D.C., argued (Jerry M. Hunter, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Charles Donnelly, Supervisory Attorney, N.L.R.B., Washington, D.C., on brief), for petitioner.

Frederick F. Holroyd II, Holroyd, Yost & Merical, Charleston, W.Va., for respondent.

Before WIDENER and HALL, Circuit Judges, and HAMILTON, District Judge for the District of South Carolina, sitting by designation.

## OPINION

HAMILTON, District Judge:

This case is before the court on application of the National Labor Relations Board (NLRB) for enforcement of an order issued against the Princeton Memorial Hospital, d/b/a Princeton Health Care Center (the Center), on September 23, 1987, and reaffirmed in a supplemental order dated May 31, 1989.[1] The court has jurisdiction to enforce an order of the NLRB pursuant to Section 10(e) of the National Labor Relations Act (the Act), 29 U.S.C. § 160(e). Because we find that the Center is an exempt political subdivision outside the NLRB's jurisdiction, we deny enforcement.

## I.

The rather complex relationships among the various entities involved in this case are not disputed. Because the jurisdictional issue turns on these relationships, it is necessary to review them in some detail.

Princeton Memorial Hospital was founded in 1964 in the City of Princeton, West Virginia as a nonprofit health care corporation by a group of private individuals. The bylaws of Princeton Memorial Hospital provided that "the affairs of the corporation shall be managed by its Board of Directors, which shall have responsibility for the control and management of the property, funds and operations of the corporation." The Board was made up of five directors, who were private citizens elected by the membership of Princeton Memorial Hospital.

The private hospital operated by Princeton Memorial Hospital was replaced by a new facility in 1970. This new facility was to be operated by Princeton Community Hospital, which had been incorporated in 1965. Its certificate of incorporation provided for a board of nine directors, one of whom was to be the Mayor of the City of Princeton. Princeton Memorial Hospital ceased operating in 1970, although it retained its corporate status. During the 1970s the function of Princeton Memorial Hospital was to assist Princeton Community Hospital in physician recruitment and other support activity.

On March 27, 1984, Princeton Community Hospital amended its bylaws to require that the selection of all its directors be ratified by the Princeton Municipal Council (Council). The amendment authorized the Council to remove Princeton Community Hospital directors for cause and required that Princeton Community Hospital file reports with the Council.

On February 1, 1985, Princeton Memorial Hospital amended its bylaws to provide that its directors "be selected from the Board of Directors of Princeton Community Hospital." In addition, the bylaws re-

---

1. The NLRB determined that the Center engaged in unlawful practices in violation of Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), and Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3).

quired that the Board of Princeton Memorial Hospital include as "ex officio" directors the Chief Executive Officer and Legal Counsel for Princeton Community Hospital. Finally, the amendment also provided that the directors of Princeton Memorial Hospital were to be approved by and subject to removal by the Board of Princeton Community Hospital.

Around 1979, the decision was made to establish a nursing home to relieve overcrowding at the Princeton Community Hospital. Although the initial plan called for Princeton Community Hospital to build and operate the nursing home, the decision was ultimately made to establish the home under Princeton Memorial Hospital. As a result, on petition of Princeton Community Hospital and the Center, the certificate of need was transferred to Princeton Memorial Hospital, officially authorizing it to operate the Center.

The Center contracted with Health Care and Retirement Corporation of America (Health Care), a hospital management firm, to administer the Center. Health Care furnished an administrator, who hired approximately 100 employees to operate the Center and handled all personnel matters at the Center. The Board of Princeton Memorial Hospital had the responsibility of negotiating management agreements with Health Care, providing for overall personnel policies, providing for general pay increases, and hearing final appeals of employee grievances. On June 30, 1988, the contract with Health Care expired and was not renewed. Subsequently, Princeton Community Hospital contracted to provide personnel services to the Center.[2]

In December 1983 the Center and the National Union of Hospital Health Care Employees, AFL–CIO (Union) stipulated to an NLRB-conducted election. That election was held on January 27, 1984, and a second election was held on August 21, 1984. After the second election, which was won by the Union, the Union filed unfair labor practice charges alleging several violations of the National Labor Relations Act by the Center both before and after the election. On June 30, 1986, an administrative law judge issued a decision finding that the NLRB had jurisdiction over the Center (despite the Center's objections that it was not an employer within the meaning of Section Two of the Act), and finding that the Center had committed numerous violations.

On September 23, 1987, the NLRB issued a decision and order affirming the ALJ's jurisdictional determination, as well as his determination that the Center had violated the Act. The NLRB filed a petition with this court for enforcement of the order, but on July 19, 1988, the Center moved to remand the case to the NLRB based on a change of circumstances affecting the jurisdictional issue. The NLRB did not object, and the court remanded the case. Subsequently, the NLRB, with one member dissenting, concluded that it had jurisdiction over the Center and that the changed circumstances alleged failed to justify reconsidering the prior order. The NLRB therefore affirmed its original decision and order requiring the Center to remedy the unfair labor practices.

## II.

The precise legal issue presented is whether the Princeton Health Care Center is an "employer" within the meaning of Section 2 of the National Labor Relations Act and therefore within the NLRB's jurisdiction, or whether the Center's ties to Princeton Community Hospital and the City of Princeton render it a "political subdivision" and thus outside the reach of the NLRB. We have determined that on the record presented in this case, the Center is more properly classified as a political subdivision. For that reason, we deny the application to enforce the order of the NLRB.

Section Two (2) of the Act provides as follows:

The term 'employer' includes any person acting as an agent of an employer, direct-

2. It was this changed circumstance that resulted in the remand to the NLRB for further consideration. The NLRB concluded that the change in management affected only its discretionary jurisdiction.

ly or indirectly, *but shall not include* the United States or any wholly owned Government corporation or any Federal Reserve Bank or *any State or political subdivision thereof,* or any person subject to the Railway Labor Act as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 152(2) (emphasis added). The term "political subdivision" is not defined in the Act. Courts have held that the term includes those entities that are either "(1) created directly by the State, so as to constitute a department or administrative arm of the government or (2) ... administered by individuals responsible to public officials or the general electorate." *NLRB v. Natural Gas Utility District of Hawkins County,* 402 U.S. 600, 604–05, 91 S.Ct. 1746, 1749, 29 L.Ed.2d 206 (1971) (*"Hawkins County"*). The Supreme Court approved this two part test in *Hawkins County,* but it emphasized that the test did not necessarily define the boundaries of the political subdivision exemption. *See also South Carolina State Ports Authority v. NLRB,* 914 F.2d 49, 52 (4th Cir.1990).[3]

The NLRB's rulings on its own statutory jurisdiction are entitled to great weight. *NLRB v. E.C. Atkins & Co.,* 331 U.S. 398, 403–04, 67 S.Ct. 1265, 1268–69, 91 L.Ed. 1563 (1947). The NLRB's determination must be accepted by a reviewing court "if it has a reasonable basis in the evidence and is not inconsistent with the law." *Id.* The NLRB's jurisdiction is to be interpreted broadly, and the exemption found in Section 2(2) of the Act is to be construed narrowly. *NLRB v. Parents and Friends of the Specialized Living Center,* 879 F.2d 1442 (7th Cir.1989).

### A.

■ Following the *Hawkins County* analysis, the Center argues initially that it was "created" by Princeton Community Hospital, thus satisfying the first definition of political subdivision. This contention, however, is not supported by the record. Instead, the record reflects that the founders of the Center intentionally kept it separate from Princeton Community Hospital to avoid certain potential problems.[4] In addition, the Center's contention that the City guaranteed the Mercer County bonds issued to raise the funds for the Center is also without support in the record. The resolution reflects that the bonds were actually guaranteed by the "Health Care Fund, or a unit or subsidiary thereof." The record does not shed any light on the identity of "Health Care Fund," nor does it suggest any relationship between "Health Care Fund" and the City of Princeton or Princeton Community Hospital.

Based upon the record before us, we cannot conclude that Princeton Memorial Hospital d/b/a Princeton Health Care Center was created by the City of Princeton or Princeton Community Hospital.

### B.

■ The *Hawkins County* court listed as the second class of entities properly classified as "political subdivision" those that are "administered by individuals who are responsible to public officials or to the general electorate." The second test re-

---

**3.** Once it is established that the entity meets the definition of employer found in the Act and is not exempt, the NLRB must then make a second inquiry. The NLRB must then consider what has been called its "discretionary jurisdiction" by asking whether the employer has sufficient control over the employment conditions of its employees to enable it to bargain with a labor organization as their representative. *Jefferson County Community Center v. NLRB,* 732 F.2d 122 (10th Cir.1984); *NLRB v. Newton Corp.,* 671 F.2d 219 (6th Cir.1982). Although the NLRB has also argued at length that it properly exercised its discretionary jurisdiction, the Center

made clear at oral argument that it does not challenge the NLRB's exercise of discretionary jurisdiction in this case. Instead, the Center's entire argument is based upon the statutory jurisdiction issue.

**4.** The record reflects that the Center was established under Princeton Memorial Hospital in order to avoid auditing conflicts between the Department of Welfare and the Department of Health, thereby ensuring a more favorable financial situation for the elderly residents of the Center.

quires that "an entity ... demonstrate that its policy-making officials have 'direct personal accountability' to public officials or to the general public." *Cape Girardeau Care Center*, 278 NLRB 1018, 1019 (1986). When first presented with the issue, the NLRB determined that there was no evidence that the Center is accountable to Princeton Community Hospital for review or approval of any decisions regarding its operations, the terms of the management contract with Health Care, or its budget. When given another opportunity to consider the issue based on an alleged change in circumstances, the NLRB declined to do so.

The Center emphasizes that the bylaws of Princeton Memorial Hospital specifically provide that the directors must be selected from among and be subject to removal by the directors of Princeton Community Hospital. The directors of Princeton Community Hospital, in turn, are subject to ratification and removal by the Princeton Municipal Council. This means of selecting the board of directors raises two distinct issues: (1) whether it can be disregarded because it was accomplished by internal amendment of the bylaws rather than by external force of law; and (2) whether it satisfies the second test for political subdivision as being administered by individuals who are responsible to public officials or to the general electorate.

At least two circuits have indicated in passing that there may be some distinction between responsibility imposed externally by force of law and responsibility that may arise due to internal decision. In *Crestline Memorial Hospital Ass'n, Inc. v. NLRB*, 668 F.2d 243 (6th Cir.1982), the court pointed out that the decision to allow all citizens to vote for members of the board was an internal decision:

> [T]he Directors are not responsible *by law* to the electorate since no city or local laws govern the formation or operation of the Hospital. Rather, the decision to include all citizens as members of

the Hospital is entirely the corporation's (deriving solely from the corporate constitution) and is subject to change.

*Id.* at 245. In *Jefferson County Community Center v. NLRB*, 732 F.2d 122 (10th Cir.1984), the court indicated that a community center did not qualify as a political subdivision, noting:

> The composition of the Center's Board of Directors is established not by statute but by the by-laws of the corporation, which are subject to amendment by a two-thirds vote of the Board. Thus, to the extent the Directors are accountable to public officials, they are so accountable by choice rather than by law. Such an arrangement does not qualify the Center as a political subdivision under the Board's second test.

*Id.* at 125 n. 3.

We cannot accept this distinction as a meaningful one based upon the record before us. The language of the statute and the legislative history do not contain any hint that such a distinction was within the contemplation of Congress. Instead, the "political subdivision" exemption reflects Congress's intention of precluding the NLRB's involvement in the employment relationships between state and local governments on the one hand, and their employees on the other. That goal requires that the exemption be applied regardless of the enabling source of the governmental authority. Where, as here, it is clear that governmental authority is present, the key point is simply that Congress did not intend for the NLRB's jurisdiction to reach such an entity. Any judicial gloss that distinguishes among the possible sources of governmental authority in these cases is without support in the statute. Based upon the record, it is clear that regardless of their source, the ties between the Center and public officials in this case are too close to be ignored.[5]

---

5. That relationship can be succinctly stated as follows: The Center was established and operated under the authority of Princeton Memorial Hospital, whose five board members are selected from, approved by, and subject to removal by the board of Princeton Community Hospital, whose directors in turn are subject to ratification and removal by the Princeton Municipal Council and whose membership must include the Mayor of the City of Princeton.

It is also necessary to consider the change in management that occurred in 1988. On July 1, 1988, Princeton Community Hospital contracted to provide personnel services to the Center, thereby replacing Health Care. Although the proffered evidence was characterized by the NLRB in a single sentence as relevant only to the discretionary jurisdiction question, it is not so obvious to us that this limitation is warranted. The second *Hawkins County* test asks whether the Center is "administered by individuals who are responsible to public officials or to the general electorate." If Princeton Community Hospital is now directly responsible for the administration of the Center, the NLRB's statutory jurisdiction over the Center is certainly called into question.

The management agreement dated July 1, 1988 between Princeton Memorial Hospital and Princeton Community Hospital provides that Princeton Community Hospital will develop and implement employment procedures for use in managing the Center's hiring practices. In addition, the contract requires Princeton Community Hospital to develop and implement procedures regarding hours, wages, terms, and conditions of employment. Princeton Memorial Hospital agrees to pay Princeton Community Hospital a $100.00 management fee each month.

We have concluded that the contract by which Princeton Community Hospital agreed to provide these personnel management services, combined with the overlapping board arrangement, is the type of control needed to classify the Center as being "administered by individuals who are responsible to public officials or to the general electorate." This conclusion is based upon several observations. First, where board members are responsible to elected officials, courts have found the term applicable. *See, e.g., Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266 (6th Cir.1990). The unusual arrangement by which the Board members of Princeton Memorial Hospital are chosen does not change the fact that the responsibility to public officials is ultimately there. Second, the day to day administration of the Center is now directly tied to the City after Health Care's contract was not renewed and Princeton Community Hospital began providing those services. We therefore find that the ties between the Center and the City are sufficient to qualify the Center as a political subdivision.

### III.

In conclusion, we have determined that the term "political subdivision" is properly applied to the Center based upon the record in this case, and that the NLRB therefore lacks jurisdiction. For that reason, the application of the National Labor Relations Board for enforcement of its order issued against Princeton Memorial Hospital on September 23, 1987 and reaffirmed on May 31, 1989, is hereby

DENIED.

K.K. HALL, Circuit Judge, dissenting:

I agree with the Sixth and Tenth Circuit cases rejected by the majority, at 178–79. *Crestline Memorial Hospital Ass'n v. NLRB*, 668 F.2d 243, 245 (6th Cir.1982); *Jefferson County Community Center v. NLRB*, 732 F.2d 122, 125 n. 3 (10th Cir. 1984). A private entity should not be able to immunize itself from the labor laws by declaring that a public official or body may remove its directors, especially when the entity can unilaterally revoke its declaration in the unlikely event any such removals are threatened. There is not a scintilla of evidence that the city of Princeton exercises any control over this employer, has ever interfered in the employer's labor-management relations, or has any inclination to exercise the illusory powers the employer professes to have bestowed upon it. The labor laws should not be so easily evaded. I would enforce the Board's order.

I respectfully dissent.