**ARAMARK CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**The Florida Public Employees Council 79, AFSCME (Union), International Union of Operating Engineers, Local 465, AFL–CIO, Intervenors.**

Nos. 97–9535, 97–9550.

United States Court of Appeals,
Tenth Circuit.

Sept. 22, 1998.

David W. Miller, of Baker & Daniels, Indianapolis, IN (Philip J. Gibbons, Jr. with him on the briefs), for Petitioner.

Howard E. Perlstein, Deputy Assistant General Counsel, N.L.R.B., Washington, DC (Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, with him on the briefs), for Respondent.

Marsha S. Berzon, Altshuler, Berzon, Nussbaum, Berzon & Rubin, San Francisco, CA (Jonathan P. Hiatt, AFL–CIO, Washington, DC, John C. Dempsey, Larry P. Weinberg, and Margaret A. McCann, AFSCME, Washington, DC, Richard Griffin and Helen L. Morgan, International Union of Operating Engineers, Washington, DC, with her on the briefs), for Intervenors.

Before BRISCOE, McWILLIAMS, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge.

Aramark Corporation ("Aramark") seeks review of two orders of the National Labor Relations Board ("Board") asserting jurisdiction over Aramark's operations and ordering Aramark to bargain with the Florida Public Employees Council 79, AFSCME ("Council 79") and with the International Union of Operating Engineers, Local 465, AFL–CIO ("Local 465") (collectively, "Unions"). The Board has petitioned for enforcement of its orders, and the Unions have intervened to support the Board's application for enforcement.

Aramark argues the Board is without jurisdiction to order Aramark to engage in collective bargaining because Aramark's operations fall within the political subdivision exemption of the Act. Aramark also argues the Board is without jurisdiction because under its government contracts, Aramark does not retain sufficient control over its labor relations to engage in meaningful bargaining with a labor union. Our jurisdiction to review the Board's orders arises under sections 10(e) and (f) of the National Labor Relations Act ("Act"), 29 U.S.C. § 160(e), (f). This court rejects Aramark's claim the Board erred in concluding it was not an exempt political subdivision. This court remands to the Board, however, to determine upon an appropriately developed record whether Aramark retains sufficient control over labor relations to engage in meaningful collective bargaining such that the Board may assert jurisdiction over Aramark's operations.

## I. BACKGROUND

Aramark is a Delaware corporation providing food services nationwide. Aramark manages food service operations in the Duval County School District ("School District") in Jacksonville, Florida, and at The Citadel in Charleston, South Carolina. The challenged Board orders arose out of Aramark's refusal to recognize and bargain with the Unions representing Aramark's food service employees in Duval County and at The Citadel.

### A. Duval County Proceedings

In July 1990, Aramark and the Duval County School Board ("School Board") entered into a contract for Aramark to manage all of the food service operations of the School District. Prior to this time, the School District operated and managed its own food service program staffed solely by public employees. Under the parties' contract, employees in the food service operation as of the contract date, July 1, 1990, remained employees of Duval County. These employees accordingly retained civil service status and the employees were in a public-sector collective-bargaining unit represented by Council 79. All food service employees hired after July 1, 1990 were Aramark employees and were not represented in the public-sector collective-bargaining unit.

The original contract was renewed yearly until June 30, 1995. At that time, after submitting a bid for a new contract, Aramark was awarded a one-year contract, effective July 1, 1995. This contract was renewable for additional one-year periods.

In December 1996, Council 79 filed a petition with the Board seeking to represent Aramark's approximately 430 food service employees working in the School District. Aramark responded by asserting the Board lacked jurisdiction over its operations because Aramark did not retain sufficient control over essential terms and conditions of employment, including wages and benefits, to be able to engage in meaningful bargaining with a labor union. Aramark also argued that its operations fell under the political subdivision exemption of § 2(2) of the Act[1] because the individuals responsible for day-to-day food service operations serve at the pleasure of public officials or are public employees.[2]

---

1. Section 2(2) of the Act exempts from the Act's coverage "any State or political subdivision thereof." 29 U.S.C. § 152(2).

2. Specifically, Aramark contended its District Manager, who is in charge of day-to-day operations and who has overall responsibility for fulfilling Aramark's contractual obligation to manage the School District's food services, is subject to appointment and removal by public officials. In addition, Aramark asserted the food service managers responsible for the daily supervision of

Following a hearing, the Board's Regional Director concluded the Board had jurisdiction and ordered a representation election. The Regional Director determined the Board had jurisdiction because Aramark was an "employer" within the meaning of § 2(2) of the Act[3] and because Aramark's operations met the Board's monetary jurisdictional standards, thus satisfying the Board's jurisdictional standard set out in *Management Training Corp.*, 317 N.L.R.B. 1355, 1995 WL 451936.[4] *See Aramark Corp.*, 323 N.L.R.B. No. 26, 1997 WL 101268, at *3 app. The Regional Director rejected Aramark's argument that the *Management Training* standard should not be used to determine the Board's jurisdiction. The Regional Director also rejected Aramark's contention that its operations in the Duval County schools were exempt under the political subdivision exemption. *See id.* at *3 n. 11 app.

The Board denied Aramark's Request for Review of the Regional Director's Decision and Direction of Election. In affirming the

Regional Director's decision, the Board reaffirmed its holding in *Management Training. See id.* at *1. The Board further noted that the Florida Public Employees Relations Commission had ruled it was precluded from asserting jurisdiction over Aramark's food service workers because they were not public-sector employees, and noted that if the Board were to decline to assert jurisdiction the Aramark employees would not have any opportunity for representation by a union.[5] *See id.*

Following the election held on February 28, 1997, in which a majority of Aramark's employees chose union representation, Council 79 was certified by the Board as the exclusive collective-bargaining representative of Aramark's food service workers employed in the School District.

Following Council 79's certification, Aramark refused the union's requests to bargain. Acting on charges filed by Council 79, the Board's General Counsel issued a complaint alleging that Aramark's refusal to bargain

Aramark food service assistants are Duval County public employees.

3. The Regional Director stated there was "no dispute that [Aramark] retains authority over [the unit employees'] hiring, discipline, initial work assignments, and discharge." *Aramark Corp.*, 323 N.L.R.B. No. 26, 1997 WL 101268, at *3 app.

4. As discussed below, prior to 1995, the Board applied a governmental control test in deciding whether to assert jurisdiction over a private employer contracting to provide services to an exempt governmental entity. *See Res–Care, Inc.*, 280 N.L.R.B. 670, 1986 WL 53982. Under the Board's *Res–Care* test, the Board would decline to assert jurisdiction over an employer contracting with an exempt governmental entity when the latter exercised such control over the primary terms of employment that the employer was unable to engage in meaningful bargaining with a labor union. *See id.* at *5. In 1995, however, the Board abandoned the *Res–Care* governmental control test in *Management Training Corp.*, 317 N.L.R.B. 1355, 1995 WL 451936. In *Management Training*, the Board decided to assert jurisdiction whenever an employer technically meets the statutory definition of "employer" under § 2(2) of the Act and meets the applicable monetary jurisdictional standards, "regardless of whether an exempt political subdivision actually controls the employment terms." *ARA Servs., Inc. v. NLRB*, 71 F.3d 129, 134–35 (4th Cir. 1995).

5. Before the present proceedings, there were two previous attempts to certify Aramark's employees in Duval County as a collective bargaining unit. In 1994, Council 79 filed a petition with the Board seeking to represent Aramark's employees providing food services in the School District. Applying the Board's *Res–Care* test, the Board's Regional Director determined that the School District's control over employment relations precluded Aramark from engaging in meaningful collective bargaining. The Regional Director therefore refused to assert jurisdiction over Aramark's Duval County operations and dismissed Council 79's petition. Council 79 did not seek Board review of the Regional Director's decision.

Council 79 subsequently filed a petition with the Florida Public Employees Relations Commission ("PERC") seeking to include Aramark's food service employees in the same public-sector bargaining unit as the Duval County food service employees. In 1995, PERC dismissed Council 79's petition. PERC found that "in light of the parties' clearly stated intention that [Aramark] is to be the employer of the employees at issue and [Aramark's] significant control over discipline, hiring, and daily operations, ... [the School District's] retention of fiscal control is [not] sufficient to confer upon it employer status." PERC therefore held that Aramark was the employer of the food services workers at issue within the meaning of the relevant state statute and, because Aramark was not a public employer, PERC was without jurisdiction. PERC's order was affirmed in state court in May 1996.

violated sections 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5), (1). Aramark filed an answer admitting its refusal to bargain, but disputing the validity of the underlying certification on the ground the Board lacked jurisdiction. On June 13, 1997, the Board issued a final Decision and Order in which the Board concluded Aramark had engaged in unfair labor practices by refusing to bargain with Council 79, in violation of sections 8(a)(5) and (1) of the Act, and ordered Aramark to bargain with Council 79 upon request. *See Aramark Corp.*, 323 N.L.R.B. No. 170, 1997 WL 331862.

## B. Citadel Proceedings

Since the mid–1960s, Aramark and its predecessor, ARA Services, Inc., has contracted with the State of South Carolina to provide food services at The Citadel in Charleston, South Carolina. The Citadel is a military college owned and operated by the State of South Carolina. Aramark's most recent contract ran from July 1994 to June 30, 1997, but was renewable for two additional one-year periods.

In February 1997, Local 465 filed a petition seeking to represent Aramark's approximately 100 food service employees at The Citadel.[6] In response, Aramark asserted the Board was without jurisdiction over Aramark's operations at The Citadel. Aramark argued that under its contract with the State, Aramark did not retain sufficient control over essential terms and conditions of employment to allow Aramark to engage in meaningful bargaining with a labor union. Aramark also asserted the Board was without jurisdiction as a result of the § 2(2) political subdivision exemption because Aramark's Food Service Director, the individual in charge of Aramark's day-to-day operations at The Citadel, serves at the pleasure of public officials.

Following a hearing, the Board's Regional Director issued a decision rejecting Aramark's claim that the Board could not assert jurisdiction over Aramark's operations at The Citadel and ordering an election. Pursuant to *Management Training*, the Regional Director concluded the Board had jurisdiction over Aramark's operations because Aramark conceded it was an employer within the meaning of § 2(2) of the Act[7] and Aramark met the applicable monetary jurisdictional standards.[8] The Regional Director did not specifically address Aramark's argument that it was an exempt political subdivision under the Act.

The Board denied Aramark's Request for Review of the Regional Director's Decision and Direction of Election. In affirming the Regional Director's decision, the Board explicitly rejected Aramark's argument that because its Food Service Director at The Citadel is selected with the participation of State officials, Aramark's operations fall under the political subdivision exemption. The Board found that Aramark did not meet the Board's political subdivision test as it was not administered by individuals responsible to public officials. The Board further concluded Aramark "is a private, commercial corporation and not a subdivision of any local or State government."

An election was held on April 16, 1997, and a majority of employees voted for union rep-

---

6. As with Aramark's operations in Duval County, before the current certification proceedings labor unions had petitioned to certify Aramark's food service employees at The Citadel in a bargaining unit. Most recently, in 1991, the Hotel Employees and Restaurant Employees International Union filed a petition with the Board seeking to represent Aramark's food service employees at The Citadel. The Board's Regional Director determined under the *Res–Care* test that the Board was without jurisdiction because Aramark was unable to engage in meaningful bargaining with a labor organization given The Citadel's ultimate authority over economic employment issues. On review, the Board upheld the Regional Director's dismissal of the petition.

7. The Regional Director found that Aramark "maintains control over ... hiring, discharge, discipline, overtime, promotions, transfers, training, and evaluations of its employees."

8. Because the Regional Director relied on the *Management Training* jurisdictional standard, the Regional Director did not address Local 465's contention that even under the Board's former *Res–Care* governmental control test, Aramark retained sufficient control over essential terms and conditions of employment to allow Aramark to engage in meaningful bargaining.

resentation. The Board thereafter certified Local 465 as the exclusive collective-bargaining representative of the Aramark food service employees employed at The Citadel. Following its certification, Local 465 sought to bargain with Aramark; Aramark refused to recognize or bargain with the union.

Pursuant to a charge filed by Local 465, the Board's General Counsel issued a Complaint alleging that Aramark violated sections 8(a)(5) and (1) of the Act by refusing to bargain with Local 465. Aramark responded by challenging the validity of the union certification on the ground that the Board erroneously asserted jurisdiction over Aramark in the representation proceeding. On July 25, 1997, the Board issued a final Decision and Order concluding that Aramark engaged in unfair labor practices by refusing to recognize and bargain with Local 465 and ordering Aramark to bargain with Local 465 upon request. *See Aramark Corp.*, 324 N.L.R.B. No. 10, 1997 WL 422767.

### C. Issues on Appeal

Aramark filed Petitions for Review of the Board's orders to recognize and bargain with the Unions representing its employees in Duval County and at The Citadel. The Board filed Cross–Applications for Enforcement of its orders and the Unions intervened to support enforcement of the Board's orders.

On appeal, Aramark contends the Board erred in asserting jurisdiction over Aramark's food service operations in Duval County and at The Citadel because (1) it is an exempt political subdivision given that the individuals responsible for administering Aramark's food service operations on a daily basis are subject to appointment and removal by public officials, and (2) pursuant to its contracts with the Duval County School Board and The Citadel, Aramark does not retain sufficient control over labor relations

to engage in meaningful collective bargaining with a labor organization.

## II. DISCUSSION

### A. Political Subdivision Exemption

■ Aramark first argues the Board erred in asserting jurisdiction over its operations at Duval County and at The Citadel because these operations fall under the political subdivision exemption of § 2(2) of the Act.

■ Under the Act, the Board may only exercise jurisdiction over statutory employers, employees, and labor organizations. *See R.W. Harmon & Sons, Inc. v. NLRB*, 664 F.2d 248, 251 (10th Cir.1981). Section 2(2) of the Act provides, in relevant part, that "[t]he term 'employer' . . . shall not include . . . any State or political subdivision thereof." 29 U.S.C. § 152(2). Although the term "political subdivision" is not defined in the Act or its legislative history,[9] the Board has long construed the exemption as limited to entities "that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *NLRB v. Natural Gas Utility Dist. of Hawkins County* [hereinafter *Hawkins County* ], 402 U.S. 600, 604–05, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971) (implicitly approving Board's two-prong political subdivision test although indicating Board's test does not necessarily define the boundaries of the political subdivision exemption); *see also Jefferson County Community Ctr. for Developmental Disabilities, Inc. v. NLRB*, 732 F.2d 122, 124 (10th Cir.1984).

■ "The Board has initial responsibility for determining who is an employer for purposes of the Act and its construction of its own statutory jurisdiction is entitled to great respect." *Jefferson County*, 732 F.2d at 124

---

9. The legislative history of the Act does indicate that "Congress enacted the § 2(2) exemption to except from Board cognizance the labor relations of federal, state, and municipal governments, since governmental employees did not usually enjoy the right to strike." *NLRB v. Natural Gas Utility Dist. of Hawkins County* [hereinafter *Hawkins County* ], 402 U.S. 600, 604, 91 S.Ct. 1746,

29 L.Ed.2d 206 (1971). Courts have further suggested that the political subdivision exemption "has its ultimate basis in the Tenth Amendment considerations of state sovereignty and the Eleventh Amendment grant of judicial immunity to the states." *Crestline Memorial Hosp. Ass'n v. NLRB*, 668 F.2d 243, 245 n. 1 (6th Cir.1982).

(citations omitted); *see Hawkins County*, 402 U.S. at 605, 91 S.Ct. 1746 ("The Board's construction of the broad statutory term ['political subdivision'] is ... entitled to great respect."). This court "must accept the Board's determination 'if it has a reasonable basis in the evidence and is not inconsistent with the law.'" *Jefferson County*, 732 F.2d at 124 (quoting *NLRB v. E.C. Atkins & Co.*, 331 U.S. 398, 403–04, 67 S.Ct. 1265, 91 L.Ed. 1563 (1947)); *see Museum Assocs. v. NLRB*, 688 F.2d 1278, 1280 (9th Cir.1982). The Board's factual findings are upheld if supported by substantial evidence in the record when considered as a whole. *See* 29 U.S.C. § 160(e).

■ Aramark does not contend its operations are exempt under the first prong of the Board's political subdivision test. Instead, Aramark relies on the second prong of the test. This second prong requires "an entity ... [to] demonstrate that its policy-making officials have direct personal accountability to public officials or to the general public." *NLRB v. Princeton Memorial Hosp.*, 939 F.2d 174, 178 (4th Cir.1991) (quotations omitted) (ellipses in original).

In determining whether the employing entity is administered by individuals responsible to public officials for purposes of the political subdivision exemption, courts and the Board generally consider whether a majority of the employer's governing body—the governing board and executive officers—is appointed by or subject to removal by public officials. *See, e.g., Jefferson County*, 732 F.2d at 125–26; *Truman Med. Ctr., Inc. v. NLRB*, 641 F.2d 570, 573 (8th Cir.1981); *Economic Sec. Corp.*, 299 N.L.R.B. 562, 1990 WL 272722, at *2 & n. 10; *Woodbury County Community Action Agency Employer*, 299 N.L.R.B. 554, 1990 WL 267415, at *2; *see also Princeton Memorial Hosp.*, 939 F.2d at 179 (holding nursing home was political sub-

division both because home's directors were responsible to elected officials and because the day-to-day administration of center was directly tied to city).

Courts and the Board also consider whether the entity possesses attributes commonly associated with public status. *See Hawkins County*, 402 U.S. at 605–09, 91 S.Ct. 1746; *Jefferson County*, 732 F.2d at 126. For example, in *Hawkins County*, the Supreme Court determined that the employing entity, a nonprofit utility district formed pursuant to a state law allowing the creation of utility districts to provide a wide range of public services, was a political subdivision in part because the district possessed the power of eminent domain and the power to issue tax-exempt bonds; the district was operated on a nonprofit basis; the district was declared by state statute to be a "municipality"; and the district's records and operations were subject to public scrutiny. *See Hawkins County*, 402 U.S. at 605–09, 91 S.Ct. 1746. In addition, the Court recognized that the district's commissioners were initially appointed by the county judge and were subject to removal proceedings under a state statute applicable to all state officials. *See id.*

In contending its operations are exempt, Aramark relies solely on the asserted control of public officials over the individuals in charge of administering on a daily basis Aramark's food service contracts in Duval County and at The Citadel.[10] Aramark does not claim that its governing board and executive officials are appointed by or are subject to removal by public officials. Aramark is a privately held corporation, and there is no evidence in the record that either Duval County or The Citadel have any authority over or connection with Aramark's governing body. Aramark also does not contend it possesses any of the attributes deemed indicative of public status.

---

**10.** With respect to its Duval County operations, Aramark specifically contends it is exempt because Aramark's District Manager, the individual responsible for administering the Duval County contract on a day-to-day basis, was appointed by and is subject to removal by the School Board and Superintendent. In addition, Aramark's food service assistants are directly supervised by food service managers employed by Duval Coun-

ty. At The Citadel, Aramark contends it is exempt because Aramark's Food Service Director, the individual in overall charge of the Citadel food service operation, is subject to appointment and removal by Citadel officials. In addition, Citadel officials have authority to appoint and remove Aramark's Assistant Food Service Director and Production Manager.

In the Duval County proceedings, the Regional Director found there was no record evidence to support Aramark's contention it was exempt as a political subdivision of the State within the meaning of Board case law. *See Aramark Corp.*, 323 N.L.R.B. No. 26, 1997 WL 101268, at * 3 n. 11. In reviewing the Regional Director's decision, the Board did not specifically address Aramark's argument it was exempt as a political subdivision, but merely affirmed the Regional Director's decision. In the Citadel proceedings, the Board noted that Aramark is "a national corporation, with sales valued at $5.6 billion ... and with 140,000 employees." The Board stated that even assuming Aramark's Food Service Director at The Citadel, the individual responsible for administering the Citadel food service contract on a daily basis, is selected with the participation of state officials, "we find, nonetheless, that [Aramark] is not 'administered by individuals who are responsible to public officials ...' and that it is a private, commercial corporation and not a subdivision of any local or State government."

■ Aramark has failed to show the Board's determination that Aramark was not exempt from the Act's coverage under the political subdivision exemption was without a reasonable basis in the evidence or was inconsistent with the law. In determining that Aramark's Duval County and Citadel operations did not fall within the political subdivision exemption, the Board implicitly focused on whether Aramark as a national corporation could be considered a political subdivision, rather than restricting its focus to Aramark's specific operations in Duval County and at The Citadel. The Board's treatment of Aramark is consistent with the Board's and courts' general application of the political subdivision test. As indicated above, in considering whether an entity is a political sub-

division of a state, the Board and courts examine the entity's governing body, rather than focusing solely on the specific operation's administrators or management personnel. The Board and courts further consider whether the entity as a whole possesses characteristics common associated with public entities, such as sovereign powers or tax-exempt status. Under this application of the political subdivision exemption, an employing entity is not transformed into a political subdivision based solely on government involvement in the administration of a specific operation undertaken by an otherwise private corporation.[11]

■ In a recent decision, the Board expressly confirmed that its political subdivision test focuses on the employing entity as a whole, rather than a single operation of the entity. In *Spectrum Healthcare Services, Inc.*, 325 N.L.R.B. No. 198, 1998 WL 398269, a case involving a private employer providing health care services to an Illinois correctional center, the Board rejected the employer's argument, similar to Aramark's in this case, that the Board lacked jurisdiction because the employees responsible for administering, supervising, and managing the health care unit were employees of the Illinois Department of Corrections, serving at the pleasure of public officials. *See id.* at *1. The Board stated that to the extent the employer was relying on the "political subdivision" exemption of § 2(2), "its factual allegations fail under the [*Hawkins County* political subdivision test] ... because it asserts only that its operation at the correctional facility is supervised by state government officials, not that the [employer] itself—a Missouri corporation that is 'in the business of providing medical and health care services to inmates at correctional facilities'—is 'administered by individuals who are responsible to public officials.' "

**11.** In *Hawkins County,* the Supreme Court held that state law is not controlling on the issue of whether an entity is an exempt political subdivision. *See* 402 U.S. at 604–05, 91 S.Ct. 1746. Instead, the Court ruled that courts must examine under federal law the "actual operations and characteristics" of the employing entity to determine whether there is sufficient support for the Board's determination of whether an entity is a political subdivision. *Id.* (quotation omitted).

Contrary to Aramark's apparent contention, the Court's direction to examine an entity's actual operations and characteristics, rather than relying solely on state designation of the entity as a political subdivision, does not compel the conclusion that the proper focus of the political subdivision test is on the specific employer operation at issue, rather than on the employing entity as a whole.

*Id.* at *2.[12] In light of the considerable deference this court gives to the Board's determination of its statutory jurisdiction, and because Aramark has failed to show the Board's interpretation and application of the "political subdivision" exemption is unsupported by the record or is contrary to law, this court concludes the Board did not err in determining Aramark's operations were not exempt under the political subdivision exemption of § 2(2) of the Act.

## B. Governmental Control Test

■ Aramark next argues the Board erred in asserting jurisdiction over Aramark's operations in Duval County and at The Citadel because, under its contracts with the exempt governmental entities, Aramark is allegedly deprived of sufficient control over its labor relations to engage in meaningful collective bargaining.

### 1. Board's Jurisdictional Tests

In 1986, the Board adopted a governmental control test for deciding whether to assert jurisdiction over private employers who had contracted with exempt governmental entities for the provision of services. *See Res–Care, Inc.,* 280 N.L.R.B. 670, 1986 WL 53982. Under the *Res–Care* analysis, the Board examined the control over essential terms and conditions of employment retained by both the employer and the exempt governmental entity. *See id.* at *4. The Board held in *Res–*

*Care* that when an employer does not retain ultimate authority over the essential terms and conditions of employment, i.e., wages and fringe benefits, "meaningful bargaining is not possible." *Id.* at *6. The Board therefore declined to assert jurisdiction over the employer when the exempt governmental entity exercised such control over the employer's labor relations that the employer was not capable of engaging in meaningful collective bargaining. *See id.*

In 1995, however, the Board overruled the *Res–Care* governmental control test and, in *Management Training Corp.,* 317 N.L.R.B. 1355, 1995 WL 451936, announced that "in determining whether the Board should assert jurisdiction, the Board will only consider whether the employer meets the definition of 'employer' under Section 2(2) of the Act and whether such employer meets the applicable monetary jurisdictional standards." *Id.* at *6. The Board reasoned that focusing on control over economic terms and conditions of employment under the *Res–Care* test oversimplified the bargaining process and improperly injected the Board into the substantive aspects of that process. *See id.* at *4–*5. In addition, the Board noted the *Res–Care* test led to lengthy litigation. *See id.* at *5. The Board determined that it should not "be deciding as a jurisdictional question which terms and conditions of employment are or are not essential to the bargaining process," and stated that "whether there are

---

**12.** In *Spectrum Healthcare Services, Inc.,* 325 N.L.R.B. No. 198, 1998 WL 398269, the Board also rejected the further argument advanced by Aramark that in considering whether an entity is "administered by individuals who are responsible to public officials," "administered" refers to responsibility for day-to-day operations or responsibility for developing and implementing personnel policies and employment conditions. The Board recognized that in two prior decisions, it had suggested that "administration" referred to "responsibility for day-to-day operations." *Id.* at *2 n. 2. The Board stated, however, that "in both of those cases the Board's decision whether to assert jurisdiction turned on the extent of control over terms and conditions of employment exercised by the governmental body and the extent left to the private entity." *Id.* The Board then noted that it had abandoned the governmental control analysis in its *Management Training* decision and had adopted a new jurisdictional standard focusing

on whether an employer met the definition of "employer" under § 2(2) and satisfied the applicable monetary jurisdictional requirements. *See id.*

As the Board recognized in *Spectrum Healthcare Services,* the extent of the contracting government entity's control over an employer's day-to-day operations and employment conditions is not a determining factor in deciding whether the employer can be considered a political subdivision. Instead, such control is relevant to the separate "governmental control" analysis discussed in the next section of this opinion, which has been applied by courts (and previously by the Board) to determine whether the employer or the governmental agency is the true "employer" for purposes of the Act. Therefore, insofar as Aramark's political subdivision argument relies on the extent of governmental control over its day-to-day operations and employment conditions, this is properly considered in the next section addressing the governmental control test.

sufficient employment matters over which unions and employers can bargain is a question better left to the parties at the bargaining table and, ultimately, to the employee voters in each case." *Id.* at *3, *1. The Board further stated that meaningful bargaining can occur even when

> the employer's ability to respond to union demands is restricted by its contract with the exempt entity. The fact that some matters have to be approved by the contracting government agency does not mean that bargaining is meaningless; there are, after all, proposals to be drafted—if not in the extant contract, then in future ones— as well as other matters to be negotiated which do not require contractual approval.

*Id.* at *4.

In concluding it had jurisdiction over Aramark's operations in Duval County and at The Citadel, the Board relied solely on the *Management Training* jurisdictional standard. Under the *Management Training* analysis, the Board's jurisdiction over Aramark was established by the minimal showing that Aramark met both the definition of "employer" under § 2(2) and the applicable monetary jurisdictional standards. Aramark does not dispute that it satisfies the *Management Training* standard. Instead, Aramark contends that in light of the government entity's control over labor relations in Aramark's Duval County and Citadel operations, the *Management Training* standard is not the proper test for determining the Board's jurisdiction.

### 2. Circuit Precedent

In *Board of Trustees of Memorial Hospital v. NLRB*, 624 F.2d 177, 185 (10th Cir. 1980), this court held that when a "private employer who has contracted to provide services to an exempt political subdivision does not retain sufficient control over the employment relationship to engage in meaningful collective bargaining, § 2(2) deprives the Board of jurisdiction." The *Memorial Hospital* decision explained that when the private employer does not have sufficient control over labor relations to engage in meaningful bargaining, the Board is without jurisdiction "because the exempt subdivision

is deemed the true employer." *Id.* This court has reaffirmed the *Memorial Hospital* holding in subsequent cases. *See Denver Post of Nat'l Soc'y of Volunteers of Am. v. NLRB*, 732 F.2d 769, 774 (10th Cir.1984); *Jefferson County*, 732 F.2d at 126; *R.W. Harmon & Sons*, 664 F.2d at 251.

Under the *Memorial Hospital* line of cases, the Board or the court must consider whether the employer or the governmental entity has "final decision-making authority over the essential terms and conditions of employment," including wages, fringe benefits, hiring and firing, and personnel policies, in determining whether the private employer retains sufficient control over the employment relationship to engage in meaningful collective bargaining. *Jefferson County*, 732 F.2d at 127 (holding Board had jurisdiction when employer had final authority over the essential terms and conditions of employment, including wages, benefits, hiring, firing, promotion, discipline, and grievances, although employer was subject to various government-imposed restrictions); *see also Denver Post*, 732 F.2d at 774–75 (holding Board properly exercised jurisdiction when employer fully controlled the essential employment terms, including hiring, firing, discipline, grievance procedures, and benefits, although employer's "flexibility with regard to wages and benefits undoubtedly is hampered by budget ceilings" imposed by governmental agency); *R.W. Harmon & Sons*, 664 F.2d at 251 (holding Board properly exercised jurisdiction when employer controlled "the basic bargaining subjects: wages, seniority, grievance procedures, vacation, insurance, and retirement plans"); *Memorial Hospital*, 624 F.2d at 185–189 (holding Board erred in exercising jurisdiction when government retained ultimate authority over staffing, wage rates, and fringe benefits, and when employer could not enter into collective bargaining agreement without government agency's approval). This court has cautioned, however, that "the jurisdictional test does not require that an employer control all terms and conditions of employment, but only that [the employer] retain enough control to bargain

effectively." *Jefferson County*, 732 F.2d at 127.

Because the Board relied solely on the *Management Training* standard in finding it had jurisdiction over Aramark's operations in Duval County and at The Citadel, the Board did not consider whether, under the previous *Res–Care* governmental control test, Aramark retained sufficient control over essential terms and conditions of employment to engage in meaningful bargaining. Aramark contends that the Board's failure to consider whether Aramark could engage in meaningful collective bargaining is fatal to the Board's jurisdictional findings and orders. The Board, on the other hand, contends its assertion of jurisdiction pursuant to the *Management Training* standard was proper under the Act. The Board argues that its prior application of the *Res–Care* governmental control test was merely an exercise of Board discretion, pursuant to § 14(c)(1) of the Act, 29 U.S.C. § 164(c)(1),[13] to decline or assert jurisdiction and was not a statutorily mandated condition on the Board's jurisdiction. The Board further asserts the current jurisdictional test is consistent with the plain language of § 2(2) of the Act and is supported by sound statutory policies. To the extent the *Management Training* jurisdictional standard allows the Board to disregard whether an employer actually retains sufficient control over labor relations to engage in meaningful bargaining, however, that standard is inconsistent with controlling circuit precedent in *Memorial Hospital* and subsequent cases.

The Board urges this court to reconsider and invalidate circuit precedent by recognizing the *Management Training* test is a reasonable and valid construction of the Act and by holding the Board's previous governmental control test is not statutorily required. The Board further argues the *Memorial Hospital* and *Jefferson County* decisions confused the Board's statutory jurisdiction and discretionary exercise of that jurisdiction, mistakenly determining that the governmental control test was a statutory requirement, rather than merely a test adopted by the Board pursuant to its jurisdictional discretion under § 14(c). *See Memorial Hospital*, 624 F.2d at 185 (holding § 2(2) deprives Board of jurisdiction when employer does not retain sufficient control); *Jefferson County*, 732 F.2d at 126 (stating that tests for Board's statutory jurisdiction and for discretionary exercise of that jurisdiction are "essentially the same," requiring the court to determine in both instances whether the employer retained "sufficient control over the employment relationship to engage in meaningful collective bargaining" (quotation omitted)). The Board asserts this court "should take this opportunity to clarify any apparent confusion between the Board's exercise of its discretionary jurisdiction and explicit statutory limits on the Board's jurisdiction" resulting from these cases.[14] The Board also argues the Supreme Court and circuit case law emphasize that courts should defer to the Board's reasonable interpretations of the Act.

■ This panel lacks the power to reconsider the *Memorial Hospital* line of cases as urged by the Board. One panel of the circuit cannot overrule the decision of another panel. This circuit's adherence to the holding of *Memorial Hospital* and subsequent cases can only be ended by *en banc* reconsideration or a superseding contrary decision by the

---

**13.** Section 14(c) of the Act provides, in relevant part:

> The Board, in its discretion, may, by rule of decision or by published rules ..., decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction.

29 U.S.C. § 164(c)(1).

**14.** Two circuits have recently upheld the validity of the Board's *Management Training* jurisdiction-

al standard. *See Pikeville United Methodist Hosp. v. United Steelworkers of Am.*, 109 F.3d 1146, 1152–53 (6th Cir.1997) (holding *Management Training* jurisdictional test did not contravene § 2(2)); *Teledyne Econ. Dev. v. NLRB*, 108 F.3d 56, 59 (4th Cir.1997) (same). These courts have held that the governmental control test adopted by the Board in *ResCare* was not statutorily mandated but was instead used by the Board to define its discretionary exercise of jurisdiction. *See Pikeville United Methodist Hosp.*, 109 F.3d at 1152–53; *Teledyne Econ. Dev.*, 108 F.3d at 59.

Supreme Court.[15] *See LeFever v. C.I.R.*, 100 F.3d 778, 787 (10th Cir.1996); *In re Smith*, 10 F.3d 723, 724 (10th Cir.1993).

■ .*Memorial Hospital* is the controlling precedent and this panel is bound to apply it. Accordingly, because the Board did not address whether Aramark retains sufficient control over the essential terms and conditions of employment to engage in meaningful collective bargaining,[16] this court remands to the Board to make the necessary findings and to reconsider whether it may assert jurisdiction over Aramark's operations consistent with circuit precedent.[17]

## III. CONCLUSION

This court concludes the Board did not err in determining Aramark's operations in Duval County and at The Citadel were not exempt from the Board's jurisdiction under the political subdivision exemption. This court, however, **DENIES** enforcement of the Board's orders and **REMANDS** to the Board to reconsider its jurisdiction consistent with this court's opinion requiring the Board to determine whether Aramark retained suffi-

cient control over labor relations to engage in meaningful collective bargaining.

---

**15.** The Board suggests that in holding § 2(2) required an examination into the employer's and governmental entity's respective control over labor relations, the *Memorial Hospital* court was merely deferring to the jurisdictional test contemporaneously being applied by the Board. The Board therefore suggests this court may deviate from that case by deferring to the Board's new jurisdictional standard. There is no indication in the *Memorial Hospital* opinion, however, that in holding the Board is without jurisdiction unless the employer retains sufficient control to effectively bargain with a labor union, the court was merely deferring to and approving the Board's contemporaneous construction of the jurisdictional provision. Although the *Memorial Hospital* decision did cite a Board decision in the course of its discussion of the governmental control standard, the court primarily cited circuit case law in support of the standard. *See Board of Trustees of Mem. Hosp. v. NLRB*, 624 F.2d 177, 185 (10th Cir.1980). The reference to a Board decision at most indicates the court viewed its holding as consistent with Board precedent. Moreover, the cases following *Memorial Hospital* have not indicated the court was relying on Board interpretation. *See, e.g., R.W. Harmon & Sons, Inc. v. NLRB*, 664 F.2d 248, 251 (10th Cir.1981) ("Courts have interpreted section 2(2) to prohibit the Board from asserting jurisdiction over private employers ... if the employer does

not retain sufficient control over the employment relationship to engage in meaningful collective bargaining." (quotations omitted)). We therefore reject this argument.

**16.** Based on our resolution of this issue, this court need not consider Aramark's alternative argument that even assuming the Board has jurisdiction, the Board's assertion of its jurisdiction constituted an abuse of discretion in light of Aramark's limited control over labor relations.

**17.** In remanding to the Board, we note this court has held that whether an employer retains sufficient control over the employment relationship to engage in meaningful collective bargaining is a question of fact which requires an examination of both the parties' agreements and actual practices. *See R.W. Harmon & Sons*, 664 F.2d at 251; *Memorial Hospital*, 624 F.2d at 185. Factual determinations and the determination of statutory jurisdiction must be made by the Board in the first instance. *See NLRB v. Cheney Cal. Lumber Co.*, 327 U.S. 385, 389, 66 S.Ct. 553, 90 L.Ed. 739 (1946) (noting § 10(e) insures that "all controversies of fact, and the allowable inferences from the facts, be threshed out ... in the first instance before the Board"); *St. Vincent Hosp. v. NLRB*, 621 F.2d 1054, 1057 (10th Cir. 1980) (noting factual determinations are committed to the Board in the first instance).